1

2

3

4                              UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6                                       EUREKA DIVISION

7

8   SKYLINE ADVANCED TECHNOLOGY          Case No.  18-cv-06641-CRB   (RMI)
    SERVICES,
9                                        **REPORT AND RECOMMENDATION**
              Plaintiff,                 **ON MOTION FOR EVIDENTIARY**
10                                       **AND MONETARY SANCTIONS**
        v.
11                                       Re: Dkt. No. 48
    SABRINA SHAFER,
12
              Defendant.
13

14       Now pending before the court is a motion for evidentiary and monetary sanctions filed by

15  Plaintiff Skyline Advanced Technology Services (hereafter, "Skyline") against its former

16  employee, Defendant Sabrina Shafer (hereafter, "Shafer"). *See generally* Pl.'s Mot. (dkt. 48).[1] The

17  motion has been fully briefed and came on for a hearing before the undersigned on July 14, 2020.

18  For the reasons stated below, the undersigned recommends that Skyline's motion be granted.

19                                       **BACKGROUND**

20       In late February of 2016, Skyline (a California corporation) hired Shafer (an Illinois-

21  licensed attorney) to serve in a capacity described as Director of Training and Services Sales for a

22  region that was described in her employment contract as, "territory in the west coast [that] shall

23  include Alaska, Arizona, California, Colorado, Nevada, New Mexico, Oregon, Utah, and

24  Washington." *See* Lipanovic Decl., Exh. 1 (dkt. 48-1) at 6-7 (employment agreement). In pertinent

25  _____

26  [1] The dispute presented in the instant sanctions motion encompasses two related cases. The motion has
    been filed in the instant case, as well as in the related case, *Shafer v. Skyline Advanced Technology Services*
27  *et al.*, Case No. 3:19-cv-00787-CRB, (dkt. 91). While Skyline's motion and reply brief was filed in both
    cases, Shafer's response in opposition and affidavit in support were only filed in Case No. 3:18-cv-06641-
28  CRB, (dkt. 55). Herein, the undersigned will generally make reference to the docket entries in Case No. 18-
    cv-06641-CRB unless specifically noted otherwise.

*United States District Court*
*Northern District of California*

part, the employment agreement provided that Shafer would receive a certain base salary for performing her sales-related functions and for performing up to 120 hours of legal work per year; additionally, Shafer was promised tiered commission payments tied to sales revenue as such: for sales ranging from $0 to $1,750,000, Shafer would receive 2% of the gross revenue; for sales ranging from $1,500,000 to $3,000,000, Shafer would receive 3% of the gross revenue; and, for sales in excess of $3,000,000 (characterized as "$3 million up"), Shafer would receive 5% of the gross revenue. *Id*. at 6. Further, for legal services rendered in excess of 120 hours in a given year, Shafer would be compensated at the rate of $250 per hour. *Id*. Finally, the agreement also stated that Skyline would provide Shafer with a cell phone, a laptop, and a landline phone. *Id*. A little over two years later, in September of 2018, Skyline terminated Shafer's employment (*see* Pl.'s Mot. (dkt. 48) at 8), which led to the parties' filing of separate actions against one another in this court.

*The Two Lawsuits*

In Case No. 18-cv-6641-CRB (hereafter, "the Skyline Case"), Skyline sued Shafer for breach of contract, breach of fiduciary duty, breach of loyalty, fraudulent concealment, fraudulent misrepresentation, negligent misrepresentation, and conversion. *See* Compl. (dkt. 1) at 5-8. The gist of the allegations underlying this action are that Shafer committed various acts of misconduct in the negotiation and execution of a three-way contract between Skyline and two other corporations (Cisco and Xentaurs). *Id*. at 3. Because Skyline enjoyed a preferred trading partner status with Cisco, Cisco would often have non-partner vendors, such as Xentaurs, enter into a contract with partners such as Skyline in order to do business with Cisco. *Id*. Skyline alleges that during the negotiation and execution of such an agreement between these three companies, Shafer was engaged in an undisclosed romantic relationship with Cisco's representative (Mr. Joe Onisick – hereafter, "Onisick"), and that both Shafer and Onisick were secretly working for Xentaurs while conspiring to see to it that grossly excessive fees were paid to Xentaurs in the course of that deal. *Id*. Skyline further alleges that because Shafer and Onisick both planned on leaving their respective employers in order to work exclusively for Xentaurs, they negotiated the deal in such a way as to provide themselves a financial benefit from the overcharge of Cisco, Skyline's

United States District Court
Northern District of California

1  customer. *Id*. at 3-4 Lastly, Skyline alleges that Shafer took certain measures to conceal her

2  activities, for example: using her personal email accounts to orchestrate the conspiracy with

3  Onisick; submitting fraudulent reimbursement requests to Skyline for Uber rides to Onisick's

4  residence; and, by refusing to return two Skyline laptops in her possession (which contained

5  proprietary information that was valuable to Skyline), and that despite Skyline's recruitment of

6  police assistance, the laptops still had not been returned as of October of 31, 2018, the date on

7  which Skyline's complaint was filed. *Id*. at 4.

8          Two months later, Shafer filed suit against Skyline in this court. *See* Case No. 19-cv-

9  00787-CRB (hereafter, "the Shafer Case"). The operative complaint in the Shafer Case is directed

10  at Skyline, as well as a number of its officers, directors, shareholders, and employees (namely,

11  Michael Zanotto, Robert Bernosky, Rodney Guenther, and Devin Mauldin). *See* First Am. Compl.

12  ("FAC") (dkt. 51) (Case No. 19-cv-00787-CRB) at 2-3. Shafer alleges that by failing to pay her

13  the approximately $650,000 owed to her in commissions earned by virtue of sales made by her

14  and her sales team before her termination, Skyline and its named employees are subject to liability

15  under Illinois law for breach of contract, and that they are also subject to liability under sections 3,

16  5, and 15 of the Illinois Wage Payment and Collections Act. *See id*. at 9-12. Shafer alleged that

17  Skyline and its named employees are also liable for defaming her character by maliciously (or

18  with reckless disregard as to falsity) accusing her of committing the crime of theft, by suggesting

19  she was unable to perform her duties, by suggesting she lacked integrity, by impugning her

20  abilities as an attorney, and by accusing her of engaging in multiple inappropriate and

21  simultaneous romantic relationships with Skyline customers. *Id*. at 12-13.

22  *Skyline's Sanctions Motion*

23          The essence of Skyline's sanctions motion is that certain evidentiary and monetary

24  sanctions are warranted because, "while litigation was imminent, Ms. Shafer deleted all the

25  information on her company laptop before returning it to Skyline, deleted countless text messages

26  and emails about the sales and commission that form the basis for her lawsuit, and deleted all of

27  her communications with Xentaurs." Pl.'s Mot. (dkt. 48) at 5. By way of relief, Skyline asks for

28  the following: attorneys' fees for having to bring this motion; a jury instruction in the Skyline case

1    to the effect that the deleted evidence is detrimental to Shafer's positions in that case; and, that the

2    Shafer case should be dismissed in its entirety because the information that has been destroyed,

3    and which Skyline in unable to retrieve from third-parties, prejudices its ability to defend itself

4    against the claims articulated in the FAC. *Id.*

5          In support of its requested relief, Skyline submits that unbeknownst to it, in the Summer of

6    2018, when Skyline, Cisco, and Xentaurs were in the midst of negotiating a certain three-party

7    agreement, Shafer and Onisick were already surreptitiously working for Xentaurs unbeknownst to

8    their principals, Skyline and Cisco. *Id.* at 6-7. Negotiations between the three companies began in

9    May, with Skyline and Cisco entrusting their representation to Shafer and Onisick respectively. *Id.*

10   What Cisco did not know was that its agent in these negotiations, Onisick, had executed a sales

11   agency agreement with Xentaurs on May 1, 2018. *Id.* at 6; *see also* Lipanovich Decl., Exh. 2 (dkt.

12   48-1) at 9-17. Skyline also submits that in July of 2018, unbeknownst to it, Shafer was negotiating

13   her own agreement with Xentaurs, which was finally signed by Xentaurs on August 19, 2018, and

14   by Shafer on August 23, 2018, with a specified "start date" of September 1, 2018. *See* Lipanovich

15   Decl., Exh. 3 (dkt. 48-1) at 19-24. The core terms of Shafer's agreement with Xentaurs were that,

16   in exchange for the rate of $175 per hour, Xentaurs would engage Shafer as an independent

17   contractor "on a non-exclusive basis [to] perform information technology services [] on projects

18   assigned by Xentaurs or its clients [], periodically report to Xentaurs or Clients on the status of

19   such projects, and [] perform services at the Service Site . . ." *Id.* at 19. On her part, Shafer

20   warrantied that she had "no obligations to any third party," and that she would "take no action that

21   conflicts with the terms of, or restricts in any manner," her performance under her agreement with

22   Xentaurs; and further, Shafer warrantied that she would not, in any way, assist any other person or

23   business to engage in the same business as Xentaurs. *Id.* at 20, 21, 24. Through third-party

24   subpoenas and the deposition of Xentaurs' corporate designee, Skyline secured copies of these two

25   agreements. *See* Pl.'s Mot. (dkt. 48) at 11.

26          Regarding the three-way contract between Xentaurs, Skyline, and Cisco, in a typical deal

27   of this sort, Skyline would receive a 20% share of the revenue secured by Xentaurs from Cisco

28   due to Skyline's involvement in the matter. *Id.* at 6. However, in this case, Skyline submits that

United States District Court
Northern District of California

4

United States District Court
Northern District of California

Shafer and Onisick structured the deal in a manner that would only inure to their own benefit, and that of Xentaurs, while Skyline got nothing. *Id*. Skyline submits that it has secured evidence indicating that, during this period, Shafer and Onisick were secretly involved with one another in a romantic capacity. *Id*. at 7. While Shafer adamantly denied ever having dated Onisick during her deposition for this case on December 9, 2019, a few days earlier, Mr. Juan Guevara, the CEO of Xentaurs testified during his deposition that shortly after hiring Shafer in late 2018, Shafer and Onisick contacted him in order to disclose the fact that "they were in some kind of romantic relationship," and that they had "been dating for some time." *See* Lipanovich Decl., Exh. 5 & 6 (dkt. 48-1) at 39, 42-43. During the pendency of the negotiation of the three-way contract between Skyline, Cisco, and Xentaurs, Skyline contends that while Onisick and Shafer were secretly dating and secretly working for Xentaurs, they communicated using their personal emails and text messages. Pl.'s Mot. (dkt. 48) at 7. Through third-party subpoena practice, Skyline has come into possession of information indicating that Shafer and Onisick exchanged over three thousand text messages during this period, with over 100 text messages being exchanged on August 23, 2018, the day that Shafer signed her contract with Xentaurs. *Id*. As to the substance of these communications, be they via personal email accounts or text messaging, Skyline submits that Shafer and Onisick no longer have any of these messages, and more specifically that Shafer and Onisick claim to have destroyed any record of these communications. *Id*. at 8, 11.

Skyline was eventually awakened to the problems with its employer-employee relationship with Shafer and terminated her employment on September 18, 2018. *Id*. at 8. Six days after her termination, Shafer sent Skyline a settlement offer related the claims she ultimately brought against her former employer for failing to pay her the approximately $650,000 she contended she was owed, as well as for allegedly defaming her character. *Id*. Two days before her termination, on September 16, 2018, Shafer forwarded some 75 emails relating to her simmering disputes with Skyline to her personal email address. *Id*. Two weeks before that, on August 31, 2018, about a week after she signed her contractor agreement with Xentaurs, Shafer emailed Skyline officials to the following effect: "I'm feeling extremely bullied and targeted by your actions. I am *formally* requesting a conversation with our legal counsel and separately with HR upon my return." *See*

5

United States District Court
Northern District of California

1    Lipanovich Decl., Exh. 15 (dkt. 48-1) at 152 (emphasis added). This email was in response to an

2    offer that Skyline had sent Shafer the previous day in which Skyline outlined the details of the

3    compensation structure that would apply to Shafer's new role with the company that was

4    scheduled for an effective date of September 1, 2018. *See id*. at 152-53.

5         At approximately 9:00 pm on September 18, 2018, the date of her termination, Skyline's

6    Director of Information Technology, Mr. Ed Misley, emailed Shafer at her personal email address

7    to let her know that he had heard that she was leaving Skyline; that he wished her the best moving

8    forward; that he had attached a pre-paid shipping label such that she could send back four items of

9    Skyline property that were in her possession: a Lenovo Yoga 700-141SK laptop computer bearing

10   the serial number PF0FQ35J, further identified as Skyline asset number 602581; a second Lenovo

11   Yoga 314 laptop bearing the serial number PF0DQC6B, further identified as Skyline asset number

12   600060; and two backup hard drives. Lipanovich Decl., Exh. 28 (dkt. 48-1) at 209-10. Two days

13   later, on September 20, 2018, at approximately 10:00 am, Shafer responded via return email to the

14   following effect: "I do have the 2 laptops, but I don't have any hard drives. I'll send the laptops

15   with the label you sent, thanks!! I also have a VoIP phone, which of course I'll send too." *Id*.

16   Thereafter, Shafer delayed returning the laptops to Skyline for more than a month, eventually

17   causing them to be shipped on October 25, 2018. *See* Pl.'s Mot. (dkt. 48) at 8-9, n.4. However,

18   given that there appeared to be no data stored on one or both laptops, Skyline retained a forensic

19   expert who determined that all data had been wiped from the laptops on October 12, 2018, through

20   a process known as "a full system restore [which] is an intentional action taken to delete the

21   information on a computer's hard drive." *Id*. at 9. Consequently, Skyline's forensic expert was

22   unable to recover any information that was previously stored on the laptops that were issued to

23   Shafer. *Id*.

24        The upshot of all this is that Skyline contends that, at a time when litigation was

25   reasonably foreseeable to both parties, Shafer preserved certain favorable evidence by forwarding

26   it to her personal email address, while taking care to delete and destroy all other evidence, thereby

27   depriving Skyline access. *Id*. at 9-11. For example, Skyline contends that two days before her

28   termination, Shafer forwarded 75 emails to her personal email account which would have been

6

responsive to certain discovery requests (in the Shafer case) relating to the dispute as to whether or not Shafer's commission payments were tied to her geographic territory. *Id.* at 9. However, Skyline contends that while all 75 emails were responsive to its discovery requests, Shafer only produced 15 of them while failing to produce those that Skyline maintains "are directly contrary to Ms. Shafer's current position that she is entitled to commission for the company's entire gross revenue rather than those from a limited territory." *Id.* at 9. Skyline's forensic examination also reveals that the 15 documents produced by Shafer in discovery in this case were printed on October 8, 2018, three-hole punched, and kept in hard copy form, which Skyline maintains "confirms [the fact] that Ms. Shafer printed the documents she liked on October 8, 2018, and then deleted everything from her personal email account." Pl.'s Mot. (dkt. 48) at 9-10.

Finding itself frustrated in the discovery process by Shafer's repeated contentions she was no longer in possession of any of the missing items that Skyline had requested (such as electronic copies of her emails, or her correspondence with Onisick during the relevant period using her personal email account or text messaging), Skyline then sought to take Shafer's deposition. *Id.* at 10. Deposing Shafer did little more than deepen Skyline's frustration as Shafer was less than cooperative. *Id.* at 10-11. When asked about the printed emails she had produced with missing pages and attachments, Shafer claimed to know nothing; when asked if she had produced any text messages with Onisick, Shafer again claimed to know nothing; when asked to confirm that she had executed the above-described independent contractor agreement with Xentaurs (dated August 23, 2018) while still employed with Skyline, Shafer denied having entered into any such agreement while employed with Skyline; when asked to confirm authorship of emails which were sent from Shafer's Skyline email account, Shafer claimed that "someone else could have sent those emails"; also, Shafer responded to a strikingly large number of questions posed to her by stating that she did not understand the question (some of which were so clear and simply phrased that it strains credulity to imagine that she in fact did not understand the question) (*see* Shafer Deposition Excerpts, Lipanovich Decl., Exh. 5 (dkt. 48-1) at 28-39) (e.g., Q: "Did you ever have a personal or romantic relationship with Bill Hentsbell? - - A: "I don't understand the question"), otherwise, she responded that she did not know, or did not recall, in response to over 300

United States District Court
Northern District of California

1    questions. Pl.'s Mot. (dkt. 48) at 10-11.

2         In short, because of Shafer's destruction of documentary and electronic evidence,

3    combined with her supposed inability to recall information or understand simple questions during

4    her deposition, Skyline has been forced to rely to a great extent on third-party discovery to prepare

5    its case-in-chief in the Skyline case and to prepare its defense in the Shafer case. *Id*. at 11. While

6    serving a subpoena on Xentaurs and conducting a deposition of its corporate designee bore some

7    fruit (as described above), Skyline found itself similarly stonewalled in its attempts to secure

8    discovery from Onisick. *Id*. Noting that Onisick and Shafer are represented by the same attorney,

9    Skyline submits that Onisick testified "at deposition that every single communication with Ms.

10   Shafer has been destroyed." *Id*. Otherwise, Onisick's deposition appears to have followed the

11   same theme that dominated Shafer's deposition: when Onisick was asked if he sent a particular

12   email, he responded that he did not recall; when asked if he had any reason to believe that he did

13   not send the email in question, Onisick contended that he did not understand the question; when

14   asked what type of cell phone he owned, Onisick claimed not to understand the question; and,

15   overall, Onisick's deposition excerpts were littered statements to the effect that he either did not

16   know, did not recall, or did not understand the question. *See* Onisick Deposition Excerpts,

17   Lipanovich Decl., Exh. 9 (dkt. 48-1) at 136-138.

18        Accordingly, Skyline contends that Shafer's duty to preserve evidence was triggered once

19   litigation became reasonably foreseeable (by August 31, 2018, when she "formally" requested a

20   conversation with Skyline's legal counsel and its HR officer). Pl.'s Mot. (dkt. 48) at 12-13.

21   Skyline submits that Shafer breached this duty in a number of ways: (1) by deleting all data on

22   Skyline's two laptops almost three weeks after threating litigation while extending her own

23   settlement offer; (2) by deleting dozens of documents sent to her personal email account shortly

24   before her termination, including commission statements that are relevant to her claims against

25   Skyline; (3) by deleting communications between herself and Xentaurs in which she shared

26   confidential Skyline information while still employed at Skyline; (4) by deleting all

27   communications with individuals that she claims told her about Skyline's allegedly defamatory

28   statements; and, (5) by deleting her communications with Onisick. *Id*. at 13-14. Regarding the

United States District Court
Northern District of California

extent of the resulting prejudice, Skyline submits that: (1) without documents with which to impeach her, Shafer was "frequently able to dodge questions at deposition," meaning that her destruction of evidence operates to prevent Skyline from establishing Shafer's actions – notwithstanding her contrary representations – through contemporaneous documents or emails; and, (2) "[i]f Ms. Shafer had produced these emails and agreements instead of destroying them, then it would have been much easier to cross examine her because Ms. Shafer's credibility would be even more lacking when she denied their authenticity and accuracy." *Id*. at 15-16. At bottom, Skyline contends that because Shafer engaged in a campaign to delete all this evidence after she anticipated litigation, "it is inherently reasonable to infer that these lost emails and text messages were damaging to Ms. Shafer's case." *Id*. at 16.

*Shafer's Response*

Shafer's response in opposition (dkt. 55) is largely reliant on a sworn affidavit which she executed on June 22, 2020, and which was filed as an attachment to a declaration filed by her attorney. *See generally* Shafer Aff. (dkt. 56-1) at 1-7. In pertinent part, Shafer now contends that when she started her employment with Skyline, she was given the laptop by Skyline for her to keep as her own property as part of her compensation package. *Id*. at 2. Shafer also claims that when she was hired in 2016, she was told that all the data on the laptop issued to her by Skyline would be backed up on Skyline's computer server. *Id*. Claiming that certain Skyline employees hatched a scheme in 2018 to deprive other employees of their rightful commission amounts, Shafer contends that her refusal to participate resulted in the termination of her employment. *Id*. at 2-3. Shafer states that "[w]ithin days of the termination," she offered to send back the laptop issued to her by Skyline, as well as a second laptop in her possession that she contends was owned by Cisco. *Id*. at 3-4. In essence, she now claims that her offer to send Skyline "her" laptop was merely a conciliatory gesture, but that she ultimately chose to not send either laptop because she was waiting to receive her final compensation from Skyline along with an accounting of her outstanding commission payments. *Id*. at 4. She also submits that when she communicated a settlement offer (in lieu of litigation) to Skyline, her "intention was not to litigate, but to push back against Skyline's project to destroy [her] reputation in the industry and as a lawyer." *Id*. Noting

that she received an email from Skyline on October 8, 2018, in which she was told that her continued failure to return the laptops would result in Skyline filing a police report. *Id*. at 5. Two days later, she received a check from Skyline for $22,224.09, which she understood to be Skyline's perception of what she was owed as final compensation. *Id*. Stating that because she wanted to continue using the laptop, and also because she was worried that "Skyline might surreptitiously and remotely (over the internet) plant software" on the laptop for the purpose of spying on her, Shafer now contends, "I had the hard drive removed [from the laptop] and replaced with a new one." *Id*. Without making any mention whatsoever of what she did with the laptop's original hard drive, Shafer simply mused that she "believed that Skyline had a back-up copy of the original hard drive on its server and that [she] would never be able to get the personal information that was stored on the back-up files on the Skyline server." *Id*. Then, "[b]efore new software could be installed on the new hard drive," due to a phone call from a police detective that Shafer contends she received on October 24, 2018 (informing her that she was going to be prosecuted for theft), she immediately sent "her" laptop as well as the one belonging to Cisco back to Skyline on October 25, 2018. *Id*. at 5-6. Shafer states that the effect of false theft charges caused her to send the laptop back to Skyline and to "abandon" her ownership of it. *Id*. at 6. Finally, Shafer also now contends that, starting many years prior to the commencement of her employment with Skyline, she "developed an information management practice of regularly – daily and weekly, deleting emails and text messages that were no longer of use me (sic)." *Id*.

Shafer's response in opposition to Skyline's motion contains a surprisingly candid concession (which is surprising in light of the fact that she took such care to be remarkably evasive and highly uncooperative during her deposition). Initially though, her opposition begins with a series of obfuscations regarding the time when a party's duty to preserve evidence is triggered – Shafer's response appears to sometimes contemplate that point in time as being when litigation is "imminent," rather than reasonably foreseeable. *See* Def.'s Opp. (dkt. 55) at 2. At other points in her response, Shafer further conflates these standards by suggesting that the duty would be triggered only when a party acts with an "intention [] to litigate," or "in anticipation of litigation," or in "preparation for litigation." *See id*. at 5, 9. In any event, Shafer contends that

United States District Court
Northern District of California

1   Skyline's spoliation motion is nothing more than an attempt to characterize her "innocent

2   management of her emails and text messages" as a violation of a duty to preserve evidence. *Id*. at

3   3. By way of argument, Shafer begins with the conclusory assertion that Skyline unreasonably

4   delayed in filing its motion for sanctions, in a display of "gamesmanship designed to bring undue

5   pressure on Shafer during the settlement process," and that "Skyline has provided no explanation

6   for waiting between 7 to 19 months to file is spoliation motion." *Id*. at 7-8.

7          Surprisingly, Shafer concedes that she did in fact have an obligation to preserve evidence

8   relating to issues raised by Shafer and Skyline in their respective cases against one another;

9   however, she maintains that the operative date for that obligation was October 2, 2018, that is,

10  when she received a letter from Skyline's counsel telling her to preserve all evidence because

11  Skyline was investigating her activities during the period she worked for the company. *Id*. at 9.

12  Thus, while overlooking the fact that Shafer continued to delete text messages, emails, as well as

13  replacing and discarding hard drives, *after* October 2, 2018, she argues that her obligation to

14  preserve evidence did not begin on August 31, 2018, when she "formally" requested a meeting

15  with Skyline's counsel and HR officer because, as she had put it, she felt "extremely bullied and

16  targeted" by Skyline's actions. *Id*. Instead, she now contends that all she meant by that was to

17  suggest that she was interested in receiving "her own legal advice and Skyline's legal perspective"

18  regarding the terms of her existing employment contract as well as the proposed replacement

19  contract. *Id*. Thus, she maintains that her August 31, 2018, email was not "in anticipation of

20  litigation or preparing litigation against Skyline." *Id*. Further, Shafer submits that she produced all

21  email and text communications requested in discovery, except for what she had deleted pursuant

22  to her "data management policy." *Id*. Because Shafer concedes that – in her mind – her duty to

23  preserve evidence was triggered as of October 2, 2018, her subsequent decision to replace the hard

24  drive of Skyline's laptop ten days later, on October 12, 2018, without taking care to preserve the

25  drive's contents means that she, *in her own words*, "acted with a culpable state of mind, but not in

26  bad faith, in not preserving the emails and documents on the hard-drive." *Id*. at 11. Then, without

27  venturing to render any description whatsoever as to what was on the now-deleted or replaced

28  hard drive, the missing or deleted emails, or the missing or deleted text messages, Shafer casually

contends that "the alleged spoliated information has no relevance to Shafer's breach of contract claim." *Id.* at 12. As to the now-deleted evidence that might be relevant to Skyline's claims – again, without describing the substance of what has been deleted – Shafer submits similarly that "all the emails and text messages that appear relevant to the argument the Skyline (sic) weaves in its spoliation motion came into existence prior to August 31, 2019." *Id.* at 13. In short, these are the reasons advanced by Shafer in support of her contention that Skyline's motion is due to be denied.

*Skyline's Reply*

In reply, Skyline begins by pointing out that Shafer's sworn affidavit is a "sham declaration" that is due to be stricken or disregarded because it is in material conflict with her deposition testimony in a number of respects. *See* Pl.'s Reply (dkt. 59) at 6. For this reason, Skyline submits that the court should regard Shafer's shifting and self-contradicting narrative as evidence of willfulness and bad faith such as to justify dismissing the Shafer case as a sanction for her evidentiary spoliation. *Id.* In her affidavit, Shafer contends that she was gifted the laptop when she was hired as part of her compensation package, but during her deposition, when she was asked how many laptops she had that belonged to the company, Shafer testified that she had one Skyline laptop and one Cisco laptop – thus, the claim in her affidavit that she "owned" the Skyline laptop contradicts her deposition testimony. *Id.*; *see also* Shafer Deposition, Exh. 29 (dkt. 59-1) at 5-6. Similarly, in her affidavit, Shafer claimed that it was only the thought of a false accusation of theft (spurred by a call from a police detective on October 24, 2018) that caused her to "abandon" her ownership of the laptop and send it back to Skyline; however, at her deposition she testified that her decision to send back the two laptops was formed when she learned that she was obligated to send back one laptop to Cisco and the other to Skyline – making no mention of any police detective or of any alleged fear of being falsely accused of theft. Pl.'s Reply (dkt. 59) at 6. Regarding the contents or integrity of the Skyline laptop's hard drive, Shafer's affidavit contends that she had the hard drive physically replaced with another one (while making no mention of what happened to the original drive); however, her deposition testimony paints a radically different picture in that she testified: that she did not copy anything from that drive; that she did

United States District Court
Northern District of California

1    not delete anything from that computer; that she did not push the factory reset button on that

2    computer; that she did not give it to someone else to do any of the things just mentioned; and, that

3    she did not in any way alter the laptop or have anything loaded on the laptop from the time her

4    employment was terminated until the time she returned it to Skyline. *See id.* at 7; *see also* Shafer

5    Deposition, Exh. 29 (dkt. 59-1) at 6. Incidentally, during her deposition, when Shafer was asked

6    whether she returned the Skyline laptop in exactly the same condition, with everything that was on

7    it on her last day of employment with Skyline, Shafer – yet again – claimed that she did not

8    understand the question. *Id*. Skyline also points to the letter that its counsel sent Shafer on October

9    2, 2018 (*see* Exh. 30 (dkt. 59-1) at 9) in which counsel specifically instructed Shafer that "[n]o

10   files or other evidence should be erased or deleted from the computers before they are returned

11   and you should take appropriate steps to preserve all evidence in your possession relating to any of

12   the matters described herein" – this is the same letter that Shafer now contends put her on notice

13   that litigation was "imminent." In any event, Skyline contends that the admonition in this letter

14   seriously undermines Shafer's more recent contention that she believed that the entire contents of

15   that laptop's hard drive were backed up remotely by Skyline – and that, "[i]ndeed, Skyline did not

16   have a back-up of the laptop." Pl.'s Reply (dkt. 59) at 7. Furthermore, Skyline notes that at no

17   point during her deposition or during discovery did Shafer disclose her alleged "information

18   management practice" of destroying electronic information that was of no use to her, nor did she

19   disclose her intentional destruction of data from Skyline's laptop during the discovery phase of

20   this case. *Id*. at 8.

21         As to any purported delay in filing the sanctions motion, Skyline submits that while written

22   fact discovery did indeed close in November of 2019, that certain key depositions still needed to

23   be taken throughout December (namely, the depositions of Onisick, Shafer, and of the corporate

24   designee for Xentaurs), the transcripts of which then took several weeks to produce; following

25   which, Skyline disclosed its intention to bring its sanctions motion in the joint case management

26   conference statement that was filed on January 3, 2020, after which the court referred the case for

27   a settlement conference. *Id*. at 8. Because Skyline knew that preparing and filing this motion

28   would incur in excess of $40,000 in attorneys' fees, Skyline hoped to avoid that by resolving the

13

1    case through the court's settlement referral before having to bring this motion; and, after the case

2    failed to settle, Skyline quickly filed the motion within two weeks of the settlement conference. *Id.*

3    at 8-9.

4         Skyline next submits that Shafer's story about replacing the laptop's hard drive so that she

5    could appropriate it to her personal use still fails to explain what she did with the original hard

6    drive and why she failed to preserve that drive for litigation given that – in her mind – a duty to

7    preserve evidence was triggered as of October 2, 2018, the date of the letter received from

8    Skyline's counsel directing her, *inter alia*, to preserve all evidence in her possession, especially

9    evidence contained on the two laptops. *Id*. at 13. Thus, given that the laptop's hard-drive was

10   either reformatted or replaced ten days later, on October 12, 2018, Skyline submits that Shafer's

11   admission that she acted with a "culpable state of mind" but not in "bad faith" is bizarre. *Id*. at 12.

12   At bottom, Skyline contends that as of August 31, 2018 (and by Shafer's own admission, as of

13   October 2, 2018), Shafer was on notice that the information on her company laptop was relevant to

14   potential litigation and that she nevertheless destroyed all information from the laptop on October

15   12, 2018, ten days after the date on which *she* claims she had a duty to preserve evidence, and

16   (also by her own admission) that she destroyed this information with a "culpable state of mind."

17   *Id*. at 17. Accordingly, Skyline submits that this conduct established willful destruction of

18   evidence that justifies the relief sought by Skyline pursuant to *Leon v. IDX Systems Corp.*, 464

19   F.3d 951, 959 (9th Cir. 2006).

20                                  **DISCUSSION**

21        At the outset, the undersigned will address a threshold issue raised by Shafer's contention

22   that Skyline purposefully delayed filing its motion as a gesture of "gamesmanship" to gain an

23   upper hand in an upcoming settlement conference scheduled for some time in July of 2020.

24   Shafer's argument in this regard is unpersuasive. Aside from the fact that Shafer has identified no

25   prejudice whatsoever stemming from this alleged delay, Skyline's explanation for the timing of

26   the filing of its sanctions motion appears perfectly reasonable. Thus, Shafer's suggestion that the

27   motion is due to be denied based on the timing of its filing is meritless because the motion appears

28   to have been filed without unreasonable delay.

United States District Court
Northern District of California

United States District Court
Northern District of California

As to the merits of the parties' dispute, there are two sources of authority under which a district court can sanction a party who has destroyed evidence. *See generally Leon*, 464 F.3d at 958. First, Fed. R. Civ. P. 37(e)(1) provides that in cases where electronically stored information ("ESI") should have been preserved but is lost because a party has failed to take reasonable steps to preserve it, and the ESI cannot be restored or replaced through additional discovery, upon finding prejudice to another party from the loss, a court may order measures no greater than necessary to cure the prejudice – alternatively, under Fed. R. Civ. P. 37(e)(2), if there is a finding that the party acted with the intent to deprive another party of the information's use in the litigation, a court may impose a presumption that the lost information was unfavorable to the culprit, instruct the jury that it may or must presume the information was unfavorable to the culprit, or dismiss the action or enter a default judgment. Second, it is well established that federal courts "have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983).

With these standards in mind, the first task for the court is to determine the point in time when Shafer was obligated to preserve information that was attended with an evidentiary value in either the Skyline case or the Shafer case. Shafer contends that the date was October 2, 2018, when she received a sternly worded letter from Skyline's counsel basically telling her that an investigation into her conduct was afoot, and that she was expressly directed to preserve all evidence because litigation appeared to be imminent. Skyline, on the other hand, contends that the date should be fixed at August 31, 2018, when Shafer informed her employers at Skyline that due to her feeling "extremely bullied and targeted" by Skyline's actions, she was "formally" requesting a meeting with Skyline's legal counsel and its HR officer, as well as needing to seek out legal counsel of her own before she could respond to Skyline's proposal for modifying her compensation schedule and job duties.

Trial courts in this district seem to generally agree that the duty to preserve evidence is triggered once a potential claim is identified; at that point, a litigant is under a duty to preserve evidence which he or she knows, or reasonably should know, is relevant to the potential litigation.

15

*See Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012); *UMG Recordings, Inc. v. Hummer Winblad Venture Partners (In re Napster, Inc. Copyright Litig.*), 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) ("As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action."); *Hynix Semiconductor, Inc. v. Rambus Inc.*, 591 F. Supp. 2d 1038, 1061 (N.D. Cal. 2006) (duty to preserve is triggered when it becomes apparent that litigation is more than a mere possibility). Furthermore, contrary to Shafer's suggestions about what her subjective intentions might have been when she "formally" requested a meeting with Skyline's counsel, it should be noted that this is an objective standard that does not ask whether one party in fact reasonably foresaw litigation, instead, the inquiry focuses on whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation. *See Apple Inc.*, 888 F. Supp. 2d at 990. Thus, it can be said that the reasonable foreseeability of litigation is a flexible, fact-specific, and objectively-determined inquiry that allows a court to exercise the discretion necessary to navigate the multitude of factual circumstances that can arise in the context of a spoliation inquiry; and, while the standard does not automatically impose the duty to preserve documents whenever there exists a distant or remote possibility of litigation, it is also not so inflexible as to require that litigation be imminent (as Shafer appears to suggest), or even probable without significant contingencies. *See Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011).

Under this standard, and based on the record as described in detail above, the undersigned would ordinarily be inclined to find that Shafer's duty to preserve evidence was triggered by, at least, August 23, 2018, the date on which she signed an independent contractor agreement in apparent derogation of her agency duties owed to Skyline. There is no reason not to conclude that a reasonable person in Shafer's position would have foreseen litigation with Skyline the moment she singed the Xentaurs agreement on August 23, 2018 (or even somewhat earlier) – particularly, in light of the allegations that Shafer had effectively spent months representing both Skyline and Xentaurs (to the detriment of Skyline) in a three-way contract with Cisco during the same period of time. However, since Skyline has requested that the date of Shafer's duty to preserve evidence be fixed at August 31, 2018 (the date on which she informed Skyline that she "formally" requested

16

a meeting with its counsel due to feeling "bullied and targeted" by Skyline's actions) the undersigned sees no reason to quibble with Skyline over a matter of eight days. Accordingly, because a reasonable person in Shafer's position would have foreseen litigation, as more than a mere possibility, and given that Shafer's email appears to have identified a claim between herself and Skyline (namely, that she felt targeted and bullied by what she perceived to be a coercive effort to induce her to join Skyline's alleged conspiracy to cheat its employees out of their commissions), the undersigned herewith finds that as of August 31, 2018, Shafer had a duty to preserve evidence because litigation between herself and Skyline was reasonably foreseeable at that point. However, as described below, even if the court were to adopt Shafer's proposal in fixing the date on which this duty was triggered at October 2, 2018, the end result would be largely the same (the difference would, of course, be that whatever relevant emails and text messages were destroyed by Shafer between August 31, 2018, and October 2, 2018, would also be subject to the adverse inference instruction in the Skyline case).

The court is next tasked with determining if Shafer in fact destroyed any relevant evidence once the duty to preserve had been triggered, and of course, to evaluate Shafer's various explanations for the various acts of destruction. As described above, a number of factors such as Shafer's status as a licensed attorney, combined with her unconscionable and uncooperative behavior at her deposition (seemingly doing everything in her power to frustrate Skyline's effort to conduct its examination, such as repeatedly feigning an inability to understand even the most simply phrased questions), the less-than-plausible explanations in her affidavit, and the overt and glaring inconsistencies between her deposition testimony and the statements in her sworn affidavit, lead the undersigned to find that Shafer's testimony is filled with half-truths and outright fabrications. Accordingly, it seems less than plausible that Shafer and Onisick coincidentally had the same "data management policy," or that Shafer has spent years meticulously deleting her text messages on a daily or weekly basis by spending inordinate amounts of time evaluating which messages deserve to be kept and which ones should be immediately deleted. Instead, the undersigned finds that if Shafer had any "information management policy," that it came into existence only once it became apparent to her that she might have to undergo litigation with

United States District Court
Northern District of California

1   Skyline and only so that she may enjoy a more, rather than less, favorable evidentiary picture in

2   the case. Accordingly, the undersigned finds that both Shafer and Onisick deleted their text

3   message and email communications with one another specifically to frustrate Skyline's efforts to

4   conduct discovery and as part of a concerted effort to cover their evidentiary tracks.

5        Furthermore, Shafer's constantly changing story about the ownership and provenance of

6   the laptop, as well as the ultimate fate of the data on its hard drive is far from believable. Her

7   contention in her sworn affidavit that she "owned" the laptop, claiming that it was given to her

8   upon her being hired as part of her compensation package is patently inconsistent with her

9   correspondence about the laptops immediately after her termination; it is also wildly inconsistent

10  with her deposition testimony. If it were true that Shafer genuinely believed herself to be the

11  laptop's owner as she now claims, then she would have said so when she responded to the email

12  sent by Mr. Minsley (Skyline's IT Director) on the date of her termination in which he directed her

13  to return the two laptops issued to her, while calling them "Skyline property." Instead, Shafer

14  responded two days later in a manner that clearly appeared to acknowledge both laptops as

15  Skyline property, while agreeing to return them forthwith. In the same vein, during her deposition,

16  when asked how many laptops she had that belonged to the company, Shafer testified that she had

17  one Skyline laptop and one Cisco laptop; however, at no point during her deposition did Shafer

18  even suggest that she was the owner of either laptop. To claim ownership now for the first time,

19  after such a record of steadily inconsistent assertions and acknowledgements, strains credulity.

20  Then there is the matter of Shafer's closely-related statement about what made her finally decide

21  to return the laptops. Shafer now claims that it was only because of the fear of a false accusation of

22  theft, due to a call from a police detective on October 24, 2018, that she decided to "abandon" her

23  ownership of the laptop and to ultimately send it back to Skyline. However, this is difficult to

24  believe because it conflicts with Shafer's deposition testimony that she eventually decided to send

25  back the laptops because she had finally gotten to the bottom of the fact that one was Cisco's and

26  the other was Skyline's.

27       Then, as if this were not enough, there is the matter of the curious gap in Shafer's account

28  about the ultimate fate of the data on the Skyline laptop. While Shafer's affidavit states that she

United States District Court
Northern District of California

had the hard drive physically replaced with another one, what is unclear is what Shafer did with the original drive because her filings in this case do not appear to address that subject. All that is acknowledged by her in this regard is that the hard drive is gone. Unfortunately for Shafer, her affidavit once again appears to spin an entirely contradictory narrative to what emerged from her deposition testimony regarding what she may have done to Skyline's laptop since her termination. As mentioned, Shafer has now taken the position that she had the laptop's hard drive removed and replaced with another one. However, at her deposition, Shafer testified that: nothing was copied or deleted from that laptop; that she did not push the factory reset button on that computer; and, that neither Shafer nor any other person at her direction had altered the laptop in any way.

In the end, because Shafer's account in her affidavit is simply not credible, and yet it serves as her only explanation for the destruction of the evidence involved, Skyline submits that the court should regard Shafer's wildly fluctuating narratives as evidence of willfulness and bad faith such as to justify dismissing the Shafer case as a sanction for her evidentiary spoliation. Then there is Shafer's unexpected concession in her response to the effect that since she had "some notice, beginning on October 2, 2018, that documents primarily on the hard drive of the laptop computer were potentially relevant to the litigation when the hard drive was replaced. So Shafer acted with a culpable state of mind, but not in bad faith, in not preserving the emails and documents on the hard-drive." *See* Def.'s Opp. (dkt. 55) at 11. Thus, Shafer concedes that she "acted with a culpable state of mind" when destroying the evidence on the hard drive in question, but without making any attempt to explain the difference, Shafer claims it was merely a "culpable state of mind," not "bad faith."

In this circuit, destruction of evidence is considered willful spoliation when a party has some notice that documents were potentially relevant to litigation before they were destroyed. *Leon*, 464 F.3d at 959 (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002). Also, because of the difficulty in clearly ascertaining the details regarding the relevance of documents or information that no longer exist, Shafer is in no position to argue for a presumption of irrelevance to documents she now concedes that she destroyed while on full notice of their potential relevance to the claims and defenses in the Shafer and Skyline cases. *See id*.

1    (citing *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1205 (8th Cir. 1982)). Thus, it appears

2    that Shafer has conceded under this standard; and, in any event, the undersigned independently

3    finds that Shafer's destruction of the evidence on the hard drive she had replaced qualifies as

4    willful spoliation because she knew she was under a duty to preserve all data on the laptop, but

5    instead she intentionally removed and replaced it while failing to preserve the original.

6        Having found bad faith and willful spoliation, the undersigned must now evaluate how

7    Shafer's actions have impaired the Skyline's ability to have a fair trial, and to what degree the

8    spoliation has threatened to interfere with the rightful decision of the case. *See Leon*, 464 F.3d at

9    959. If spoliation requires a party to go to trial and rely on "incomplete and spotty" evidence, this

10   has been held to constitute a sufficient showing of prejudice. *Id.*; *see also Anheuser-Busch, Inc. v.*

11   *Nat. Beverage Distribs.*, 69 F.3d 337, 354 (9th Cir. 1995). In this regard, Skyline submits that

12   Shafer's deliberate destruction of evidence will force it to proceed to trial in the Skyline case on

13   incomplete and spotty evidence particularly because Shafer deleted all of her text messages and

14   emails with Onisick during the negotiation of the three-way deal between Skyline, Cisco, and

15   Xentaurs. Further, Skyline submits that Shafer's misconduct has hampered its ability to defend

16   the claims in the Shafer case. This is so because – as demonstrated during Shafer's deposition –

17   without the aid of documents that were on the laptop, Skyline's cross examination was frustrated

18   by Shafer repeatedly claiming that she did not know, or did not recall, anything. Thus, Shafer's

19   actions prejudiced Skyline by preventing it from either refreshing Shafer's seemingly selective

20   recollection or, at least, establishing her knowledge of facts and her actions through

21   contemporaneously produced documents, emails, and text messages. In short, the prejudice

22   suffered by Skyline as a result of Shafer's willful destruction of evidence by replacing the hard

23   drive on Skyline's laptop and by deleting all of the relevant but unfavorable emails and text

24   messages in her possession was seriously exasperated by what appears to be the concerted effort

25   by Shafer and Onisick to stonewall Skyline's efforts to gather relevant facts and evidence through

26   their depositions. Therefore, the undersigned finds that the destroyed hard drive data, emails, and

27   text messages would have (in light of Shafer's unconscionable behavior at her deposition) most

28   likely been at the heart of Skyline's defense in the Shafer case, and likewise, they would have

United States District Court
Northern District of California

20

United States District Court
Northern District of California

most likely occupied an important role in the prosecution of Skyline's case against Shafer. Thus, the undersigned also finds that Shafer's spoliation, if not remedied by sanctions issued by this court, would likely threaten to distort the just resolution of both of these cases.

Next, the court must address the suitability of lesser sanctions than what has been requested by Skyline. To recapitulate, Skyline has asked for a terminating sanction in one case and an adverse inference instruction in the other case – that is, for the court to dismiss the Shafer case outright, and to instruct the jury in the Skyline case to assume that the evidence destroyed by Shafer was detrimental to her positions in that litigation. In deciding on the propriety of the harsh sanction of dismissal, this court must weigh five factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to effectively and fairly manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *See Anheuser-Busch, Inc.*, 69 F.3d at 348. Also, in certain cases (not applicable in the present context) there should be an inquiry as to whether the district court warned the party of the possibility of dismissal before ordering dismissal, in essence, this is part of the "consideration of alternatives" requirement. *See Malone v. United States Postal Serv.*, 833 F.2d 128, 132 (9th Cir. 1987).

As to the Shafer case, and the request for a terminating sanction, the undersigned finds as follows. First, Shafer's willful destruction of evidence combined with her unfortunate behavior at her deposition have effectively frustrated the public's interest in the expeditious resolution of this case, as well as the court's need to effectively manage its docket, thus, these factors weigh in favor of granting the requested sanction of dismissal. As to the availability of less drastic sanctions, the undersigned finds that a less drastic sanction would be futile in the Shafer case because it would not adequately cure the prejudice suffered by Skyline. Due to Shafer's willful spoliation, combined with her effective frustration of Skyline's effort to conduct discovery or to take her testimony through deposition, an adverse inference instruction would merely create a presumption that the lost data was unhelpful to Shafer and, thus, if Shafer were to produce evidence or testimony to rebut that presumption, Skyline would remain helpless to rebut that information due to the willful spoliation. Likewise, it would be useless to issue any sort of pre-sanction warning to

21

United States District Court
Northern District of California

Shafer in this case because she has already irretrievably destroyed the evidence in question and because she has already stonewalled Skyline's effort to cure or abate the prejudice through the discovery process or by deposing her. Although the public policy favoring a decision on the merits would weigh against dismissal in most cases, the undersigned finds that the other factors weigh overwhelmingly in favor of granting Skyline's request to dismiss the Shafer case as an appropriate sanction for her willful spoliation – both under Fed. R. Civ. P. 37(e)(2), and under the court's inherent power. The above-described course of events, involving the combination of willful evidentiary spoliation with a concededly "culpable state of mind," attended with such wildly inconsistent, and patently false, testimony by a private party who is a licensed attorney and an officer of the courts, warrants no lesser sanction. Indeed, in cases such as this, "[i]t is well settled that dismissal is warranted where, as here, a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings: courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Anheuser-Busch, Inc.*, 69 F.3d at 348 (quoting *Wyle*, 709 F.2d at 589). Thus, the undersigned **RECOMMENDS** that Shafer's case (Case No. 19-cv-00787-CRB) be **DISMISSED** pursuant to Fed. R. Civ. P. 37(e)(2)(C), or under the court's inherent power because (as discussed above) Shafer has engaged in deceptive practices that have seriously undermined the integrity of these proceedings.

As to Skyline's request for a jury instruction in the Skyline case, the undersigned will note that a court can take the drastic measure of instructing the jury to entertain such a presumption if the court finds that the culpable party "acted with the intent to deprive another party of the information's use in the litigation." *See* Fed. R. Civ. P. 37(e)(2). Intent may be shown "when the evidence shows or it is reasonable to infer, that . . . a party purposefully destroyed evidence to avoid its litigation obligations." *See Porter v. City & Cty. of San Francisco*, Case No. 16-cv-03771-CW(DMR), 2018 U.S. Dist. LEXIS 151349, 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018); *see also First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, No. 15-cv-1893-HRL, 2016 U.S. Dist. LEXIS 140087, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016) (finding that the defendant's agents acted with intent in deleting text messages based on evidence of an "explicit

agreement to avoid communicating electronically," which "suggest[ed] a shared intent to keep incriminating facts out of evidence"); *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 501 (S.D.N.Y. 2016) (the plaintiff's conduct was intentional under Rule 37(e) because, absent "any other credible explanation for [plaintiff's alteration of] the email addresses, it is more than reasonable to infer that the intention was to manipulate the digital information specifically for purposes of this litigation"); *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 582 (S.D.N.Y. 2017) (the plaintiff's conduct was intentional under Rule 37(e) where the evidence showed that the plaintiff either purposefully deleted e-mails that showed she might have fabricated the existence of a report that was critical to her lawsuit or purposefully failed to take any steps to preserve the e-mails); *Brown Jordan Int'l, Inc. v. Carmicle*, No. 14-cv-60629, 2016 U.S. Dist. LEXIS 25879, 2016 WL 815827, at *37 (S.D. Fla. Mar. 2, 2016) (imposing adverse inference sanctions against defendant for spoliation of evidence because the court found that defendant failed to take reasonable steps to preserve electronically stored information on his personal and company-owned devices); *see also Internmatch, Inc. v. Nxtbigthing, LLC*, No. 14-cv-5438, 2016 U.S. Dist. LEXIS 15831, 2016 WL 491483, at *4-5, *12-14 (N.D. Cal. Feb. 8, 2016) (granting plaintiff a preclusion order, an adverse inference instruction, and attorneys' fees as sanctions because defendants willfully spoliated evidence by intentionally discarding devices that contained the electronic versions of the evidence despite having a duty to preserve relevant evidence).

Thus, when intent is found, as is the case here, the court may impose a presumption that the lost information was unfavorable to the party that lost or destroyed it, and therefore, the court may issue an adverse inference instruction to the jury, or even enter a default judgment in the prejudiced party's favor. Fed. R. Civ. P. 37(e)(2)(A)-(C). The Advisory Committee Notes for Rule 37 stress that the sanctions available under (e)(2) are not to be used unless a party intentionally destroyed evidence. *See* Fed. R. Civ. P. 37(e)(2), Advisory Committee's notes to 2015 Amendment. Because the undersigned has found that Shafer acted with the intent to deprive Skyline of the destroyed information's use in this litigation, the undersigned **RECOMMENDS** that, pursuant to Fed. R. Civ. P. 37(e)(2)(A), the court should instruct the jury in the Skyline case (Case No. 18-cv-6641-CRB) that it must presume that the lost information was unfavorable to

Shafer. Indeed, at oral argument during the hearing of July 14, 2020, Shafer's counsel's argument about why a terminating sanction in the Shafer was unwarranted was tethered to his suggestion to the effect that, in the worst case scenario, Shafer's spoliation could justify an adverse inference instruction in the Skyline case. Thus, it appears that Shafer has at least tacitly conceded the propriety of an adverse inference instruction in the Skyline case.

Lastly, there is the issue of Skyline's request for sanctions in the form of attorneys' fees for having to bring and litigate this sanctions motion. The undersigned finds that an award of Skyline's reasonable attorneys' fees is warranted in this matter both under Rule 37 and the court's inherent authority given the finding that Shafer has acted with bad faith and with the intent to deprive Skyline the benefit of relevant evidence by destroying the same. Skyline has not yet, however, provided detailed evidence of its fees and expenses in bringing and litigating this motion. *See* Civ. L.R. 37-4(B)(3) ("If attorney fees or other costs or expenses are requested, itemize with particularity the otherwise unnecessary expenses, including attorney fees, directly caused by the alleged violation or breach, and set forth an appropriate justification for any attorney-fee hourly rate claimed."). Accordingly, following the final disposition of this Report and Recommendation by the district judge, the undersigned will entertain Skyline's request for fees and expenses.

Any party may file objections to this Report and Recommendation with the district court within fourteen (14) days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) & (C); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the district court's order.

**IT IS SO ORDERED.**

Dated: July 14, 2020

ROBERT M. ILLMAN
United States Magistrate Judge