Stephen A. Dennis (SBN 111401)
sdennis@thoits.com
John van Loben Sels (SBN 201354)
jvanlobensels@thoits.com
David B. Sarfati (SBN 323896)
dsarfati@thoits.com
THOITS LAW
A Professional Corporation
400 Main Street, Suite 250
Los Altos, California 94022
Telephone: (650) 327-4200
Facsimile: (650) 325-5572

Attorneys for Plaintiff
Skyline Advanced Technology Services

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYLINE ADVANCED TECHNOLOGY SERVICES, a California corporation,<br><br>   Plaintiff,<br>v.<br><br>SABRINA SHAFER, an individual, and DOES 1 through 10, inclusive,<br><br>   Defendants. | Case No. 3:18-cv-06641-CRB-RMI<br><br>**PLAINTIFF SKYLINE ADVANCED TECHNOLOGY SERVICES' [PROPOSED] FINDINGS OF FACT AND CONCLUSION OF LAW**<br><br>Judge:   Hon. Charles R. Breyer<br>PTCD:<br>Trial Date: Dec. 12, 2023 |

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................................1

II.   FINDINGS OF FACT ..........................................................................................................1

      A.    Shafer's Employment with, and Obligations to, Skyline ............................................1

      B.    Shafer's Compensation from Skyline ........................................................................2

      C.    Shafer's Uses Her Access to Confidential Skyline Information and her Decision-Making Authority at Skyline to Enrich Herself and her Romantic Partners to Skyline's Detriment ............................................................4

      D.    Sums Wrongfully Received by Shafer .....................................................................6

      E.    Losses Caused by Shafer's Conduct .........................................................................7

III.  CONCLUSIONS OF LAW ...................................................................................................7

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

i                           3:18-cv-06641-CRB-RMI
PLAINTIFF'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Southern Union Co. v. Irvin*,
  563 F.3d 788 (9th Cir. 2009) .......................................................................................... 10

**State Cases**

*Aton Center, Inc. v. United Healthcare Ins. Co.*,
  93 Cal. App. 5th 1214 (2023) .......................................................................................... 7

*Center for Healthcare Education and Research, Inc. v. International Congress for Joint Reconstruction, Inc.*,
  57 Cal. App. 5th 1108 (2020) ..................................................................................... 8, 10

*Hong Que, Inc. v. Luu*,
  150 Cal. App. 4th 400 (2007) ..................................................................................... 9, 10

*Uzyel v. Kadisha*,
  188 Cal. App. 4th 866 (2010) ........................................................................................ 10

**State Statutes**

Cal. Civ. Code § 3294 .......................................................................................................... 10

Cal. Civ. Code § 3330 ............................................................................................................ 8

THOITS LAW
A PROFESSIONAL CORPORATION
400 Main Street, Suite 250
Los Altos, California 94022
(650) 327-4200

**TO THE HONORABLE CHARLES R. BREYER:**

Plaintiff Skyline Advanced Technology Services ("Skyline"), by and through its undersigned counsel, hereby respectfully submits its Proposed Findings of Fact and Conclusions of Law.

## I. INTRODUCTION

The Court, in its Partial Summary Judgment Order ("PSJ Order") dated December 12, 2021, found that Defendant Sabrina Shafer ("Shafer" or "Defendant") breached her contract with, and duty of loyalty to, Skyline. The Court incorporates the factual and legal findings of that PSJ Order into these findings of fact and conclusions of law. The Court further notes that it has found Shafer willfully and intentionally destroyed evidence. As a result of this finding, this Court concludes that the "lost information was unfavorable to Shafer" and takes this finding into account when evaluating the evidence in this case and Shafer's conduct.

## II. FINDINGS OF FACT

### A. Shafer's Employment with, and Obligations to, Skyline

1. Skyline is a provider of training, professional services, and hardware sales. (**Zanotto Testimony**)

2. One of Skyline's biggest customers is Cisco Systems, Inc. "Cisco." Skyline is a "Cisco Certified Gold Partner," which allows it to more easily do business with Cisco, including deals with other companies that want to provide services to Cisco. (**Zanotto Testimony**)

3. Xentaurs is a company that sometimes conducts business and provides services to Cisco. Xentaurs is *not* a "Cisco Certified Gold Partner" and thus, typically conducts business with Cisco through contracts with companies such as Skyline. (**Zanotto Testimony**)

4. Xentaurs often competes with Skyline for business. (**Zanotto Testimony**)

5. On or about February 2016, Shafer accepted employment with Skyline to become its Director of Training and Sales Services. In this role, she was responsible for overseeing Skyline's training and services in Alaska, Arizona, California, Colorado, Nevada, New Mexico, Oregon, Utah, and Washington. (**Exhibit 1**).

6. As part of her hiring process, Shafer signed an "Employee Proprietary Information

and Inventions Agreement" (the "Confidentiality Agreement") (**Exhibit 3**).

7. Section 1.1 of the Confidentiality Agreement provided that Shafer would "hold in the strictest confidence and will not disclose" any of the Company's Proprietary Information, including "all confidential and/or proprietary knowledge, data or information of the Company" including, among other things, "marketing and selling, business plan, budgets and unpublished financial statements, licenses, prices and costs . . . [and] information regarding the skills and compensation of other employees of [Skyline]." (**Exhibit 3**).

8. Section 4 of the Confidentially Agreement provides that Shafer would not "without the Company's express written consent, engage in any employment or business activity which is competitive with, or would otherwise conflict with, [her] employment by [Skyline]." (**Exhibit 3**).

9. Section 4 of the Confidentiality Agreement further provides that Shafer would not "for the period of [her] employment by [Skyline] and for one (1) year after the date of termination of [her] employment by [Skyline] [she] will not induce any employee of the Company to leave the employ of the Company." (**Exhibit 3**).

### B. Shafer's Compensation from Skyline

10. Under the terms of Shafer's employment agreement with Skyline, Shafer received a base salary of $125,000 per year. (**Exhibit 1, Shafer Testimony**).

11. Under the terms of Shafer's employment agreement with Skyline, Shafer was entitled to payments of $275 per hour for each hour in excess of 120 hours that she provided legal services to Skyline. (**Exhibit 1, Shafer Testimony**).

12. Under the terms of Shafer's employment agreement with Skyline, her compensation also included commissions and bonuses based on a varying scale depending on the volume of gross revenue that she generated. Specifically, for the first $1.75 Million in revenue generated, she would receive commissions equal to 2% of that gross revenue. For generating gross revenues of $1.75 - $3.0 million, she would receive 3% of that gross revenue as bonuses. And for any gross revenue generated over $3.0 million, she would receive 5% of that gross revenue. These commissions were paid 60-days after they were earned. (**Exhibits 1, 62, Shafer Testimony**).

13. Under the terms of Shafer's employment agreement with Skyline, she was

additionally entitled to two weeks of paid vacation per year. (**Exhibit 1, Shafer Testimony**).

14. As part of her employment with Skyline, Shafer also received a cell phone, laptop, and a landline phone. She was additionally reimbursed for necessary and reasonable travel expenses, mobile device costs, and home internet. (**Exhibit 1, Shafer Testimony**).

15. Shafer also received benefits in the form of medical insurance, dental insurance, life insurance, accidental death and dismemberment insurance, long-term disability insurance, and access to Skyline's 401(k) retirement plan. (**Exhibits 1, 2, Shafer Testimony**).

16. During the time-periods of June 2016 through November 2016 and February 2017 through February 2018, Shafer received base wages of $192,308.00. (**Exhibit 119, Kawamoto Testimony**).

17. During the time-periods of June 2016 through November 2016 and February 2017 through February 2018, Shafer received commissions in the amount of $281,589.96. (**Exhibit 119, Kawamoto Testimony**)

18. During the time-periods of June 2016 through November 2016 and February 2017 through February 2018, Shafer received employee benefits with a total value of $16,814.31. (**Exhibit 119, Kawamoto Testimony**).

19. In total, during the time-periods of June 2016 through November 2016 and February 2017 through February 2018, the value of Shafer's compensation and employee benefits was $490,712.27. (**Exhibit 119, Kawamoto Testimony**).

20. During the time-period of March 2018 through September 2018, Shafer received base wages of $73,077.40. (**Exhibits 32, 119, Kawamoto Testimony**).

21. During the time-period of March 2018 through September 2018, Shafer received commissions in the amount of $171,919.57. (**Exhibits 62, 101, 108 119, Kawamoto Testimony**).

22. During the time-period of March 2018 through September 2018, Shafer received employee benefits with a total value of $9,352.29. (**Exhibit 119, Kawamoto Testimony**).

23. In total, during the time-period of March 2018 through September 2018, the value of Shafer's compensation and employee benefits was $254,349.26. (**Exhibit 119, Kawamoto Testimony**).

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

24. Shafer's employment with Skyline was terminated on or about September 18, 2018. (**Exhibit 112, Kawamoto Testimony**).

### C. Shafer's Uses Her Access to Confidential Skyline Information and her Decision-Making Authority at Skyline to Enrich Herself and her Romantic Partners to Skyline's Detriment

25. Between 2010 and 2018, Joseph Onisick ("Onisick") was an employee of Cisco.

26. Shafer was in a romantic relationship with Onisick between March 2018 and at least September 18, 2018. (*See e.g.* **Exhibits 38, 40, 41, 42, 43, 117, Onisick Testimony**).

27. Between 2012 and December 2017, Wonders was an employee of Cisco.

28. Between approximately June 2016 and November 2016, Shafer was in a romantic relationship with Wonders. (*See e.g.* **Exhibits 5, 6, 7, 11, 12, 13, 16, Wonders Testimony**).

29. The romantic relationship between Shafer and Wonders resumed approximately in January 2017 and ended again in February 2018. (*See e.g.* **Exhibit 17, 22, 23, 24, 35, 37, Wonders Testimony**).

30. On August 23, 2018, Shafer signed an "Independent Contractor Agreement" with Xentaurs. (**Exhibit 80, Shafer Testimony**).

31. Shafer was in breach of her contract with Skyline from June 2016 until her termination on September 18, 2018. (*See* **Dkt. 98**)

32. At all relevant times, Shafer intentionally concealed her conduct, which constituted a breach of her contract with Skyline.

33. Shafer breached her duty of loyalty to Skyline from June 2016 until her termination on September 18, 2018. (*See* **Dkt. 98**)

34. At all relevant times, Shafer intentionally concealed her conduct, which constituted a breach of her duty of loyalty.

35. Shafer engaged in "willful spoliation" of evidence related to Skyline's claims and defenses thereto. (**ECF Nos. 62, 98**).

36. As a result of Shafer's intentional spoliation, on or about July 14, 2020, this Court entered an order imposing an adverse instruction that "the lost information was unfavorable to the

party that lost it." (**ECF Nos. 62, 98**).

37. The records destroyed by Shafer would have shown that she breached her duty her contract with Skyline beginning on or about June 2016, and ending upon her termination on September 18, 2018. (*See* **ECF Nos. 62, 98**). Such evidence would have demonstrated breaches not known or discovered by Skyline.

38. The records destroyed by Shafer would have shown that she breached her duty of loyalty to Skyline beginning on or about June 2016, and ending upon her termination on September 18, 2018. (*See* **ECF Nos. 62, 98**). Such evidence would have demonstrated breaches not known or discovered by skyline.

39. The records destroyed by Shafer would have shown that she intentionally concealed her conduct, which constituted a breach of her duty of loyalty to Skyline at all relevant times. (***See* ECF Nos. 62, 98).**

40. On or about February 19, 2017, Shafer shared and discussed confidential information related to Skyline with Rich Wonders. (**Exhibit 18**).

41. On or about January 3, 2018, Shafer again shared and discussed confidential information related to Skyline with Rich Wonders. (**Exhibit 33**).

42. On or about May 3, 2018, Onisick sent Shafer confidential information related to Cisco, and asked her to keep the materials secret. (**Exhibit 47, 69**).

43. On or about August 23, 2018, Shafer signed an "Independent Contractor Agreement" with Xentaurs. Under the terms of this agreement, Shafer would begin working for Xentaurs on September 1, 2018, and would be paid $175 per hour. (**Exhibit 80**).

44. On or about September 10, 2018, Shafer disclosed the details of a confidential Skyline bid on a project to Juan Guevara, the president of Xentaurs. (**Exhibit 49, 92**).

45. .Shafer never disclosed to Skyline that she had signed an Independent Contractor Agreement with Xentaurs. (**Zanotto Testimony, Shafer Testimony**)

46. While Shafer was employed by Skyline, but in discussions regarding employment or employed by Xentaurs, Shafer was responsible for negotiating two Statements of Work on behalf of Skyline. The first of these is referred to as "IBN Sales Enablement Program" and the second is

known as the "ACI Re-Launch Roadshow." Xentaurs would serve as a subcontractor in both of these deals. (**Zanotto Testimony**)

47. When contracts are structured in this matter, the primary contractor (in this case Skyline) typically receives approximately 10% of the revenue that the subcontractor (in this case, Xentaurs) would receive for the contract. (**Zanotto Testimony**)

48. However, in arranging both of these deals, Shafer negotiated for Skyline to receive no money from Cisco for its role as a "pass through." (**Exhibit 86**). (**Zanotto Testimony**)

49. Skyline should have received $70,000 in profits for its role in these deals. (**Zanotto Testimony**)

50. Onisick, Shafer's romantic partner at the time, received over $10,000 in commissions from Xentaurs for the IBN Sales Enablement Program. (**Exhibit 106, Onisick Testimony**).

51. Onisick, Shafer's romantic partner at the time, received over $4,000 in commissions from Xentaurs for the ACI Re-Launch Roadshow.

52. On or about September 14, 2018, Shafer entered into an employment agreement with Xentaurs. (**Exhibit 94**).

53. Prior to her termination from Skyline, but after signing an agreement with Xentaurs, Shafer made efforts to "poach" employees from Skyline to work for Xentaurs. This conduct was in violation of her agreement and duty of loyalty to Skyline. (**Exhibit 93, 113 at 44 & 45**).

### D. Sums Wrongfully Received by Shafer

54. During the time-periods of June 2016 through November 2016 and February 2017 through February 2018, Shafer received base wages of $192,308.00. (**Exhibit 119, Kawamoto Testimony**).

55. During the time-periods of June 2016 through November 2016 and February 2017 through February 2018, Shafer received commissions in the amount of $281,589.96. (**Exhibit 108, 119, Kawamoto Testimony**).

56. During the time-periods of June 2016 through November 2016 and February 2017 through February 2018, Shafer received employee benefits with a total value of $16,814.31. (**Exhibit 119, Kawamoto Testimony**)

57. In total, during the time-periods of June 2016 through November 2016 and February 2017 through February 2018, the value of Shafer's compensation and employee benefits was $490,712.27. (**Exhibit 119, Kawamoto Testimony**).

58. During the time-period of March 2018 through September 2018, Shafer received base wages of $73,077.40. (**Exhibit 119, Kawamoto Testimony**).

59. During the time-period of March 2018 through September 2018, Shafer received commissions in the amount of $171,919.57. (**Exhibits 62, 97, 108, 119, Kawamoto Testimony**).

60. During the time-period of March 2018 through September 2018, Shafer received employee benefits with a total value of $9,352.29. (**Exhibit 119, Kawamoto Testimony**).

61. In total, during the time-period of March 2018 through September 2018, the value of Shafer's compensation and employee benefits was $254,349.26. (**Exhibit 119, Kawamoto Testimony**).

62. In total, the value of the compensation Shafer received during the time periods in which she was disloyal was $745,061.53. (**Exhibit 119, Kawamoto Testimony**).

### E.  Losses Caused by Shafer's Conduct

63. Shafer's conduct caused Skyline to suffer lost profitability and lost revenue from the Statements of Work. (**Exhibits 69, 119, Kawamoto Testimony**).

64. Skyline lost profits in the amount of $50,000.00 from the IBN Statement of Work as a result of Shafer's conduct. (**Exhibits 69, 119, Kawamoto Testimony**).

65. Skyline lost profits in the amount of $20,000.00 from the ACI Re-Launch Roadshow project as a result of Shafer's conduct. (**Exhibits 69, 119, Kawamoto Testimony**).

66. Skyline's total lost profits as a result of Shafer's conduct was $70,000.00. (**Exhibits 69, 119, Kawamoto Testimony**).

67. In total, Skyline suffered damages in the amount of $815,061.53.

### III.  CONCLUSIONS OF LAW

68. The elements of a breach of contract claim are "(1) the existence of the contract; (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach. *Aton Center, Inc. v. United Healthcare Ins. Co.*, 93 Cal. App.

5th 1214, 1231 (2023).

69. Skyline and Shafer entered into a binding and enforceable employment agreement. (*See* **ECF 98**)

70. Skyline performed all of its obligations under the employment agreement. (*See* **ECF 98**)

71. Shafer breached her contract with Skyline by entering into an undisclosed consulting agreement with Xentaurs. (*See* **ECF 98**)

72. Shafer breached her contract with Skyline by sharing Skyline's confidential information with Xentaurs. (*See* **ECF 98**)

73. Shafer breached her contract with Skyline by attempting to recruit Skyline employees to join Xentaurs. (*See* **ECF 98**)

74. Shafer breached her contract with Skyline by negotiating the terms of the IBN Statement of Work in a manner that would result in Skyline receiving no commissions. (*See* **ECF 98**)

75. Shafer breached her contract with Skyline by negotiating the terms of the ACI Re-Launch Roadshow deal in a manner that would result in Skyline receiving no commissions. (*See* **ECF 98**).

76. At all relevant times, Shafer concealed evidence that she breached her contract with Skyline.

77. Skyline suffered damages as a result of Shafer's breaches of the contract. (*See* **ECF 98**)

78. As a result of these breaches of contract, Skyline is entitled to an amount which will compensate Skyline for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. (Cal. Civ. Code § 3330).

79. Shafer's breaches of her duty of contract were continuing due to, among other things, her intentional concealment of her conduct. As a result, the value of Shafer's compensation and benefits she received from Skyline are subject to disgorgement and should be awarded as damages to Skyline. (*See Center for Healthcare Education and Research, Inc. v. International Congress*

*for Joint Reconstruction, Inc.*, 57 Cal. App. 5th 1108 (2020) ("Breach of the duties of loyalty and full disclosure may justify forfeiture of all income.")

80. The elements of a claim for breach of duty of loyalty are (1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach. *Hong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 410 (2007)

81. As an employee of Skyline, Shafer owed it a duty of loyalty. (*See* **ECF 98**)

82. .Shafer breached her duty of loyalty to Skyline by working with Onisick and Wonders to negotiate deals favoring Xentaurs at the expense of Skyline. (*See* **ECF 98**)

83. Shafer breached her duty of loyalty to Skyline by providing services to Xentaurs to the detriment of Skyline. (*See* **ECF 98**)

84. Shafer breached her duty of loyalty to Skyline by entering into an undisclosed consulting agreement with Xentaurs. (*See* **ECF 98**)

85. Shafer breached her duty of loyalty to Skyline by sharing Skyline's confidential information with Xentaurs. (*See* **ECF 98**)

86. Shafer breached her duty of loyalty to Skyline by attempting to recruit Skyline employees to join Xentaurs. (*See* **ECF 98**)

87. Shafer breached her duty of loyalty to Skyline by negotiating the terms of the IBN Statement of Work in a manner that would result in Skyline receiving no commissions. (*See* **ECF 98**)

88. Shafer breached her duty of loyalty to Skyline by negotiating the terms of the ACI Re-Launch Roadshow deal in a manner that would result in Skyline receiving no commissions. (*See* **ECF 98**)

89. At all relevant times, Shafer concealed from Skyline that she was breaching her duty of loyalty to Skyline (*See* **ECF 98**)

90. Skyline suffered damages as a result of Shafer's breaches of her duty of loyalty.

91. Shafer's breaches of her duty of loyalty were continuing, due to, among other things, her intentional concealment of her conduct. As a result, the value of Shafer's compensation and benefits received from Skyline are subject to disgorgement and should be awarded as damages to

Skyline.

92. Where a party breaches its duty of loyalty and is guilty of oppression, fraud, or malice, a Plaintiff may recover punitive damages. (Cal. Civ. Code § 3294).

93. In breaching her duty of loyalty, Shafer acted with malice, oppression, or fraud. Shafer is thus entitled to punitive damages. In light of the nature of Shafer's conduct, as well has her level of income and compensation as demonstrated in this case, appropriate punitive damages in this case are $815,061.53, an amount equal to the actual damages suffered by Plaintiff. *See Southern Union Co. v. Irvin*, 563 F.3d 788 (9th Cir. 2009) (examining proper amounts of punitive damages). (*See Center for Healthcare Education and Research, Inc. v. International Congress for Joint Reconstruction, Inc.*, 57 Cal. App. 5th 1108 (2020) ("Breach of the duties of loyalty and full disclosure may justify forfeiture of all income.")

94. As a result of Shafer's tortious conduct, Skyline is entitled to an amount which will compensate it for all the detriment proximately caused by this conduct including, but not limited to, profits lost as a result of her breaches. *Uzyel v. Kadisha*, 188 Cal. App. 4th 866, 907 (2010); *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 417 (2007).

Dated: December 1, 2023

Respectfully submitted,

**THOITS LAW**

By: /s/ *John van Loben Sels*
John van Loben Sels
**Attorneys for Skyline Advanced Technology Services**